No. 23-1018

---

## UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

---

**DAVID KNELLINGER and ROBERT STOREY, individually and on behalf of all persons similarly situated,**

*Plaintiffs-Appellants,*

v.

**DAVID YOUNG, in his individual and official capacities as Colorado State Treasurer, Colorado Office of Treasury; and BIANCA GARDELLI, in her individual and official capacities as Director of Colorado Treasury, Unclaimed Property Division**

*Defendants-Appellees.*

---

On Appeal from the United States District Court
District of Colorado
The Honorable Charlotte N. Sweeney, District Judge
Case No. 1:22-cv-01379-CNS-STV

---

### BRIEF OF APPELLANTS

---

Jonathan Greiner
Christopher Ross
**Greiner & Associates, P.L.L.C.**
401 Austin Highway, Suite 200
San Antonio, Texas 78209
Tel. (210) 824-6529
Jon@greinerattorneys.com

Richard M. Paul III
Laura C. Fellows
David W. Bodenheimer
**PAUL LLP**
601 Walnut, Suite 300
Kansas City, Missouri 64106
Tel. (816) 984-8100
Rick@PaulLLP.com

### COUNSEL FOR PLAINTIFFS-APPELLANTS

### ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

Table of Contents ......................................................................... i

Table of Authorities................................................................. iii

Statement of Related Cases .................................................... vi

Glossary ...................................................................................... vi

Jurisdictional Statement......................................................... vii

Statement of the Issue ........................................................... viii

Statement of the Case ............................................................... 1

Summary of the Argument ..................................................... 10

Argument................................................................................... 11

    I. Plaintiffs Alleged an Injury-in-Fact Sufficient to Satisfy
       Standing at the Pleadings Stage ............................................. 11

       A. Standard of Review............................................................. 11

       B. Plaintiffs Sufficiently Alleged an Injury-in-Fact by
          Alleging that Defendants Took Their Property ............. 12

          1. The District Court Erred by Failing to Accept as True
            Plaintiffs' Allegations of Property Ownership............ 13

          2. The District Court Erred by Finding Plaintiffs Failed
            to Allege Past and Future Injuries ............................. 17

          3. The District Court Erred by Finding Plaintiffs
            Cannot Sustain a Claim for Declaratory or Injunctive
            Relief........................................................................... 20

　　　C. Plaintiffs' Allegations Satisfy the Other Elements of
　　　　Article III Standing ........................................................ 21

　　　　　1. Plaintiffs' Alleged Injuries are Fairly Traceable to
　　　　　　Defendants ................................................................ 22

　　　　　2. Plaintiffs' Seek Relief That Will Remedy
　　　　　　Their Injuries ............................................................ 23

Conclusion ................................................................................ 24

Request for Oral Argument .................................................... 24

Certificate of Compliance ...................................................... 25

Certificate of Service .............................................................. 26

**Attachments**:

Attachment 1: District Court Order Granting Defendants' Motion to
Dismiss Filed 01/06/2023 ........................................................ 1

Attachment 2: District Court Final Judgment Filed 01/06/2023 ............ 2

**Cases**

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ............................ 13

*Carey v. Piphus*, 435 U.S. 247 (1978)............................................... 19, 20

*Citizen Ctr. v. Gessler*, 770 F.3d 900 (10th Cir. 2014) ........................... 12

*Holt v. U.S.,* 46 F.3d 1000 (10th Cir. 1995) ........................................ 17

*Knick v. Twn. of Scott*, 139 S. Ct. 2162 (2019)..................................... 16

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)................. 12, 22, 23

*Nova Health Sys. v. Gandy*, 416 F.3d 1149 (10th Cir. 2005) ............... 22

*NRDC v. Sw. Marine*, 236 F.3d 985 (9th Cir. 2000).............................. 23

*O'Shea v. Littleton*, 414 U.S. 488 (1974) ............................................. 18

*Petrella v. Brownback*, 697 F.3d 1285 (10th Cir. 2012)................... 11,12,

*Pueblo of Jemez v. United States*, 790 F.3d 1143 (10th Cir. 2015) ....... 11

*Rector v. City & Cty. of Denver*, 348 F.3d 935 (10th Cir. 2003)............. 19

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016).................................... 12, 20

*Taylor v. Yee*, 136 S. Ct. 929 (2016) .................................................... 10

*Taylor v. Westly*, 488 F.3d 1197 (9th Cir. 2007) ................................... 20

*U.S. v. Rodriguez-Aguirre,* 264 F.3d 1195 (10th Cir. 2001) .. 3, 14, 15, 17

*WildEarth Guardians v. U.S. E.P.A.*,
    759 F.3d 1196 (10th Cir. 2014) ................................................. 19, 23

**Rules**

C.R.S. § 38-13-101 ..............................................................................1

C.R.S. § 38-13-102 ..............................................................................3

C.R.S. § 38-13-201 ...........................................................................3,6

C.R.S. § 38-13-203 ..............................................................................6

C.R.S. § 38-13-204 ..............................................................................6

C.R.S. § 38-13-210 ..............................................................................3

C.R.S. § 38-13-501 ...........................................................................1,2

C.R.S. § 38-13-502 ..............................................................................1

C.R.S. § 38-13-503 ..............................................................................7

C.R.S. § 38-13-604 ..............................................................................1

C.R.S. § 38-13-701 ..............................................................................1

C.R.S. § 38-13-702 ..............................................................................1

C.R.S. § 38-13-801 .........................................................................3,4,6

C.R.S. § 38-13-803 ..............................................................................1

C.R.S. § 38-13-1403 ............................................................................6

C.R.S. § 38-13-1503 ............................................................................6

Fed. R. Civ. P. 12(b)............................................................................9

Fed. R. Civ. P. 8................................................................................13

42 U.S.C § 1983 ..................................................................2, 20

Appellants are unaware of any prior or related appeals.

## GLOSSARY

- Unclaimed Property: Personal property, both tangible and intangible, that has been presumptively abandoned based on timetables of alleged inactivity. Once presumptively abandoned, Colorado takes possession of the property through Defendants' enforcement of the RUUPA.

- RUUPA: Revised Uniform Unclaimed Property Act

- Unclaimed Property Website: An online platform created and maintained by Defendants and Colorado's Unclaimed Property Division. It is supposed to include information about the RUUPA, list unclaimed property currently in the possession of the State, and provide an avenue for property owners to reclaim their property.

- COT: Colorado Office of Treasury

# JURISDICTIONAL STATEMENT

The district court had jurisdiction under 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331 and 1343 because Plaintiffs' claims alleged violations of the United States Constitution. The district court entered Final Judgment on January 6, 2023. (App. A-7, 206-07). Plaintiffs appealed on January 17, 2023. (App. A-7, 208-09).

This Court has jurisdiction over this appeal under 28 U.S.C. § 1291 based on the district court's entry of Final Judgment dismissing all of Plaintiffs' claims.

## STATEMENT OF THE ISSUE

I.   Whether the district court erred in dismissing Plaintiffs' claims for
     lack of standing at the pleading stage by failing to accept Plaintiffs'
     allegations as true.

## STATEMENT OF THE CASE

**Nature of the Case**

The Colorado Revised Uniform Unclaimed Property Act ("RUUPA")[1], Colo. Rev. Stat. ("C.R.S.") § 38-13-101 *et seq.,* provides that unclaimed property is to be held in custody by the State until it can be returned to its rightful owner. The RUUPA mandates that those holding presumptively abandoned property must deliver it to the State, along with the property owner's last-known contact information. C.R.S. §§ 38-13-501, 502.

The RUUPA is clear that unclaimed property does not belong to the State—it is merely a custodian: Defendants "assume[] custody and responsibility for the safekeeping of the property." C.R.S. § 38-13-604; *see also* § 38-13-803 ("Property … is held in custody for the benefit of the owner and is not owned by the state."). In addition to cash and checks, the RUUPA authorizes Defendants to sell securities and hold public sales to liquidate other personal property. C.R.S. §§ 38-13-701, 702.

---

[1] Effective July 1, 2020, Colorado repealed its "Unclaimed Property Act" and replaced it with the Revised Uniform Unclaimed Property Act, which was amended in 2021. (App. A-14, ¶¶ 17, 21). The Constitutional violations alleged here are the same under both Acts and apply equally pre- and post- the 2020 RUUPA and the 2021 Amendment. Thus, for simplicity, this brief identifies them collectively as "RUUPA" when their provisions are consistent.

The "core" purpose of the RUUPA is to "reunite citizens with lost or forgotten property." (App. A-11-12, ¶12).[2] But the State is disincentivized to fulfill the mission of the RUUPA because it treats unclaimed property as a revenue source. (App. A-13, 19-20, ¶¶ 15, 31). Thus, despite the fact Defendants know or should know the identities and addresses of most unclaimed property owners, Defendants do little to notify citizens that their property is being held by the State. (App. A-26, ¶39). In fact, not only does the RUUPA *not* require the State to give pre-deprivation notice, it purports to delegate this due process notice requirement to those who turn property over to Defendants. C.R.S. § 38-13-501.

At issue here is Defendants' failure to provide pre-deprivation notice *before* taking possession of private property and their non-compliance with RUUPA's requirement of post-deprivation notice *after* taking possession. (App. A-19-20, ¶31). Plaintiffs/Appellants bring this action under 42 U.S.C. § 1983 against Defendants/Appellants in their official capacities challenging the constitutionality of the RUUPA for not providing pre-deprivation notice and in their individual capacities for failing to comply with the RUUPA's post-deprivation notice procedure.

---

[2] Citations to the Appendix will be in the following form: (App. [page number]).

### *The Unclaimed Property Trust Fund is a Slush Fund for the State*

The general rule is that property becomes "abandoned" and thus subject to the State's possession if it is unclaimed by the owner within a specified time, typically three years. C.R.S. § 38-13-201(m). "Unclaimed" simply means the owner "failed to make indication of interest" within the required timeframe; that is, the owner did not "reasonably demonstrate" to the entity holding the property that they were "aware the property exists." C.R.S. § 38-13-210(1), (2)(g). Practically all forms of tangible and intangible personal property are subject to the RUUPA's provisions. C.R.S. § 38-13-102(24).

Unclaimed property funds are supposed to be held in a trust fund for the benefit of the owners while Defendants seek to reunite them with their property. (App. A-11-12, ¶12; C.R.S. § 38-13-801(1)(a), (c)). The "direct and indirect costs" of administering the trust fund to reunite citizens with their property may be paid through "annual appropriations out of the principal of the unclaimed property trust fund." C.R.S. § 38-13-801(1)(d), (2). Nevertheless, Defendants do not seek to reunite citizens with their property. (App. A-19-20, ¶31). As a result, Defendants hold over $1 billion in unclaimed property. (App. A-11, 19-20, ¶¶ 12, 31).

Instead of attempting to reunite citizens with their property, the State has been using the unclaimed property trust fund as a slush fund to spend more money. Specifically, the State has invaded the trust fund to pay for things like:

- paying auditors to collect more unclaimed property (C.R.S. § 38-13-801(2)(b));

- supplementing revenue shortfalls in the general fund (C.R.S. § 38-13-801(2.5), (5));

- funding the State's adult dental fund (C.R.S. § 38-13-801(3));

- supplementing revenue shortfalls in the State's housing development grant fund (C.R.S. § 38-13-801(3.5));

- creating a tourism trust fund (C.R.S. § 38-13-801.5(1));

- funding the Colorado state fair (C.R.S. § 38-13-801.5(3)(a)(I));

- funding the agriculture management fund (C.R.S. § 38-13-801.5(3)(a)(II)); and

- funding the Colorado travel and tourism promotion fund (C.R.S. § 38-13-801.5(3)(a)(III)).

Reports also indicate that the State has begun to borrow heavily from trust funds to address budget shortfalls. (App. A-13, ¶15). By transferring tens of millions of dollars from the trust fund to the general fund, the State artificially inflates its revenues to supplement the State's budget. (App. A-19-24, ¶¶ 31, 33).

***Defendants' Ultra Vires Acts Failing to Comply with the RUUPA***

In 2019, the Colorado State Auditor published a Performance Audit of the Colorado Unclaimed Property Division for the period July 2014 through March 2019. (App. A-13-14, ¶16). The Audit revealed the State had not provided post-deprivation notice to citizens that their property was being held by the State as required by the Unclaimed Property Act since March 2005. (*Id.*) In addition, the Audit uncovered accounting violations related to incorrectly recording interest distributions that have not been fully ascertained or remedied. (App. A-21-23, ¶33(c)). Further, Defendants accepted supposedly unclaimed property without any identifying information, even if such information would be expected, such as payroll checks, savings accounts, and safe deposit boxes. (*Id.*)

The Audit also revealed that Defendants were improperly transferring and distributing unclaimed property funds. (App. A-20, ¶31). Defendants run statistical analyses to figure out how much money is likely to be needed to return to citizens making a claim and thus how much money can be taken from the unclaimed property trust fund and converted to public use. (*Id.*) These practices provide a perverse incentive to not employ an effective notice program to return property to its owners.

***Colorado's Response to the Audit–the RUUPA***

In response to the Audit, the Colorado legislature replaced the Unclaimed Property Act with the RUUPA. (App. A-14, ¶17). But rather than fix the many problems noted by the Audit, the RUUPA: 1) allowed the State to take more property and 2) shortened the time frame for the State to presume property abandoned so that it can take property more quickly. (App. A-14-17, ¶¶ 18-25). In other words, the RUUPA made the situation worse, not better. (App. A-16-17, ¶25). Specifically, the RUUPA:

- Shortened the presumptive abandonment period to three years (from five) for most types of property and applied it retroactively. C.R.S. §§ 38-13-201, 38-13-1503.

- Subjected additional property to RUUPA including Health Savings, UMGA, and UTMA accounts. C.R.S. §§ 38-13-203, 204.

One year later, to further increase the size of the unclaimed property trust fund, the legislature amended the RUUPA in 2021 to make it harder for owners to reclaim their property. (App. A-16, ¶¶ 23-24). Specifically, the 2021 Amendment:

- Repealed the requirement that the administrator's records of persons, which includes the apparent owner's name and last-known address, be available for inspection. C.R.S. § 38-13-801.

- Repealed the administrator's authority to identify the physical address of an apparent owner in published notices and on its website. C.R.S. § 13-13-1403.

***The RUUPA Fails to Require Notice Sufficient to Satisfy Due Process***

Regardless of time period, RUUPA has never required Defendants to provide notice to property owners *before* their property is possessed by the State. (App. A-17-18, ¶27). And while the various versions of Colorado's unclaimed property laws have required some form of written notice *after* the State takes possession of private property, the requirement is limited to last known contact information; and the State has not even provided that minimal level of notice in violation of the express statutory mandates. (App. A-26-28, ¶¶ 42-46).

Lastly, Defendants "[m]aintain a website or database accessible by the public and electronically searchable that contains the names reported to the administrator of all apparent owners for whom property is being held by the administrator." C.R.S. § 38-13-503. This website, however, lists only limited information about the property. (*See, e.g.,* App. A-10-11, ¶¶ 8-10).

***Plaintiffs' Property Was Taken by the State as Unclaimed***

Plaintiffs are Colorado citizens and residents. Each of the Plaintiffs discovered that the State had taken possession of their property without their knowledge or consent. (App. A-10-11, ¶¶ 7-10).

Plaintiff David Knellinger has lived at the same residence in Canon City, Colorado since 2013. (App. A-10, ¶7). In 2022, Mr. Knellinger learned through his own efforts that the State had seized funds belonging to him from Verizon Communications without his knowledge or consent. (*Id.*) From looking at the Unclaimed Property Website, he knows that the property is valued somewhere between $50 and $249. (*Id.*, ¶8). Mr. Knellinger identified the property as his based on the name, city, and zip code (the only information provided by Defendants) associated with the property. (*Id.*) Defendants still hold those funds. (*See id.*)

Plaintiff Robert Storey has lived in Peyton, Colorado since 2002. Mr. Storey learned through his own efforts that the State had seized funds owed to him by Lawyers Title Insurance Corporation without his knowledge or consent. (App A-11, ¶¶ 9-10). Defendants posted Mr. Storey's property on their website, but provided no notice designed to reunite him with his property. (*Id.*) From the Unclaimed Property Website, he knows that the value of the property is below $50. (*Id.*, ¶10). Mr. Storey identified the property as his based on the name, city, and zip code (the only information identified by the Defendants) associated with the property. (*Id.*) Defendants still hold those funds. (*See id.*)

### *Course of Proceedings and Disposition Below*

Plaintiffs filed the action below on June 1, 2022. (App. A-3, 8-40). Defendants filed a motion to dismiss under Fed. R. Civ. P. 12(b)(1) and (6) on August 29, 2022. (App. A-6, 41-93). On January 6, 2023, the district court entered an order dismissing Plaintiffs' case, concluding that Plaintiffs failed to establish "whether the property [at issue] was actually owned by them." (App. A-7, 204). The district court based this conclusion, at least in part, on the fact that Plaintiffs had not availed themselves of the State's administrative claims process to prove that the property in fact belonged to them. (*Id.*).

The district court entered Final Judgment the same day, on January 6, 2023. (App. A-7, 206-07). Plaintiffs filed their Notice of Appeal on January 17, 2023. (App. A-7, 208-09).

## SUMMARY OF THE ARGUMENT

States must "return property when its owners can be located. To do that, States must employ notification procedures designed to provide the pre-escheat notice the Constitution requires." *See Taylor v. Yee*, 136 S. Ct. 929, 930 (2016) (J. Alito concurring in certiorari denial). Here, Defendants place unclaimed property into a purported "trust" fund. This "trust" fund, though, is a trust in name only: the fund is siphoned into the State's general fund and spent. Colorado thus has no interest in an effective notice program to locate unclaimed property owners because it uses unclaimed property as revenue. In doing so, Defendants violate the Takings Clause of the Fifth Amendment and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

Despite these patently unconstitutional practices, the district court held that Plaintiffs had not sufficiently established that the unclaimed property held in their name in fact belonged to them, in part because they had not exhausted an administrative remedy with the State to do so. But the law is clear: Plaintiffs need only allege "colorable ownership" and need not exhaust administrative remedies. Accordingly, this Court should reverse and remand.

## I. PLAINTIFFS ALLEGED AN INJURY-IN-FACT SUFFICIENT TO SATISFY STANDING AT THE PLEADING STAGE.

## A. Standard of Review

A dismissal for lack of standing is reviewed *de novo* applying the same standard as the district court. *Petrella v. Brownback*, 697 F.3d 1285, 1292 (10th Cir. 2012). A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction can be either facial or factual. *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1147-48 n.4 (10th Cir. 2015). In a facial attack, the district court must accept all allegations as true. *Id.* In a factual attack, a party may go beyond the complaint and challenge the facts supporting subject matter jurisdiction by affidavits, documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts. *Id.*

Because Defendants here made a facial attack and did not try to prove up facts outside the pleadings, the district court was required to accept all allegations as true. (*Id.*) And the district court said it would. App. A-192 ("For the purposes of this motion, the Court takes as true all allegations in the Complaint.")). Accordingly, in reviewing the decision below, this Court must also accept all allegations in the Complaint as true. *Pueblo of Jemez*, 790 F.3d at 1147-48 n.4.

**B. Plaintiffs Sufficiently Alleged an Injury-in-Fact by Alleging that Defendants Took Their Property**

Plaintiffs establish Article III standing by alleging that they (1) suffered an injury-in-fact; (2) fairly traceable to the challenged action of the defendants; (3) that is likely to be redressed by the relief requested. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). Here, the district court found that Plaintiffs failed to sufficiently allege the first prong—an injury-in-fact.

When determining whether plaintiffs have standing, the Court does not inquire into the merits of the claim. *Citizen Ctr. v. Gessler*, 770 F.3d 900, 910 (10th Cir. 2014). Rather, the Court must assume for purposes of standing that each claim is legally valid. *Id.* While Plaintiffs bear the burden to show standing, their burden is "lightened considerably" because dismissal came at the pleading stage. *Petrella*, 697 F.3d at 1292. At the pleading stage, plaintiffs may rest on mere allegations because it is "presume[d] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Here, the district court failed to accept Plaintiffs' allegations as true and/or imposed an improper burden to exhaust an administrative remedy to establish ownership of the property.

## 1. The District Court Erred by Failing to Accept as True Plaintiffs' Allegations of Property Ownership

The district court erred when it failed to take Plaintiffs' allegations as true. Plaintiffs repeatedly alleged that the State seized their property and described it with the same specificity set forth on the State's Unclaimed Property Website. This complies with Fed. R. Civ. P. 8, which "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the wrongdoing. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Nevertheless, and contrary to the allegations, the district court held that Plaintiffs merely alleged "potential claims" to property that "may be claims of individuals who have similar names." (App. A-202). That is not what Plaintiffs alleged.

The district court's holding is similar to the district court's holding that was reversed in *U.S. v. Rodriguez-Aguirre*, 264 F.3d 1195 (10th Cir. 2001). There, the Magistrate, whose ruling was affirmed by the district court, held that both an allegation of ownership and some evidence of ownership was necessary for standing. *Id.* at 1202-03. Like the district court here, the Magistrate further noted that "a conclusory allegation of ownership in vaguely described property is insufficient to confer standing…." *Id.* at 1203.

Citing the standard to accept the plaintiffs' allegations as true, this Court reversed: "Requiring evidence of ownership, as opposed to allegations of ownership, is antithetical to the standards for reviewing 12(b)(1) motions to dismiss for lack of facial standing." *Id.* at 1206. Instead, allegations of "colorable ownership" are sufficient. *Id.* at n.7.

In *Rodriguez-Aguirre*, this Court relied on an allegation of ownership "that there was a large amount of personal property seized from *them*…." *Id.* at 1205 (emphasis in original). Plaintiffs' complaint here contains numerous allegations that establish ownership using both plural possessive nouns (*e.g.*, Plaintiffs' property) or possessive pronouns (*e.g.*, his property). (*See, e.g.,* App. A-9, 17, 19, 21, 23, 34, 36, ¶¶ 3, 26, 31, 33, 78, 86, 88). These allegations are sufficient to at least allege "colorable ownership" of their respective properties:

- "In 2022, Mr. Knellinger learned (through his own efforts), that COT had seized *his* private property…." (Emphasis added). (App. A-10, ¶7).

- "Mr. Knellinger never received any notice from the COT, the holder, or anyone else, before they took custody and control of *his* property." (Emphasis added). (*Id.*)

- "Defendants have failed to identify both the type and amount of Mr. Knellinger*'s* property, as reflected in the screenshot of COT's website …." (Emphasis added). (App A-10, ¶8).

- Mr. Knellinger alleged that a screenshot of the Unclaimed Property Website depicted property belonging to him based on the name, city, zip code, holder, and approximate value of the property. (*Id.*) Defendant Gardelli submitted a sworn affidavit that the screenshot was a true and accurate representation of the information on the website. (App. A-78, ¶12).

- "In 2022, Mr. Storey learned (through his own efforts) that COT had seized *his* private property...." (Emphasis added). (App. A-11, ¶9).

- "Mr. Storey never received any notice from the COT, the Holder, or anyone else, that they would take custody and control of *his* property." (Emphasis added). (*Id.*)

- "Defendants have failed to identify both the property type and amount of Mr. Storey*'s* property, as reflected in the screen of COT's website ...." (Emphasis added). (App. A-11, ¶10).

- Mr. Storey alleged that a screenshot of the Unclaimed Property Website depicted property belonging to him based on the name, city, zip code, holder, and approximate value of the property. (*Id.*) Defendant Gardelli submitted a sworn affidavit that the screenshot was a true and accurate representation of the information on the website. (App. A-78-79, ¶15).

- "Defendants' actions in taking possession of Plaintiffs*'* private property...." (Emphasis added). (App. A-9, ¶3).

As this Court held in *Rodriguez-Aguirre*, "whether some of the items are described in a manner that makes it impossible to verify either their existence or their seizure … is simply not an issue to be resolved as a matter of standing." 264 F.3d at 1206 n.7. The district court's failure to accept these allegations as true was thus error.

While unclear, the district court's order seems to accept Defendants' argument that Plaintiffs must first establish ownership of their property using the State's unclaimed property claims process before filing suit. (*Id.* at A-204). The Court also references Defendants' argument to describe the property in greater detail, but that too would require Plaintiffs to use the unclaimed property claims process to learn information held only by Defendants and not disclosed on their Unclaimed Property Website.

Either way, any requirement to exhaust an administrative remedy to establish standing was eliminated in *Knick v. Twn. of Scott*, 139 S. Ct. 2162 (2019). There, in striking down the exhaustion requirement, the Supreme Court reasoned: "[t]he fact that the State has provided a property owner with a procedure that may subsequently result in just compensation cannot deprive the owner of his Fifth Amendment right to compensation under the Constitution, leaving only the state law right. [It] is the existence of the Fifth Amendment right that allows the owner to proceed directly to federal court under § 1983." *Id.* at 2170-71.

The same reasoning applies with equal force to the district court's order below. Requiring Plaintiffs to file a claim with the State to establish ownership of the property in question before bringing suit violates *Knick*.

Notably, Defendants had the option to challenge Plaintiffs' factual allegations of ownership at the motion to dismiss stage. *Id.* at 1203. Defendants could have chosen to "go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends." *Id.*, quoting *Holt v. United States,* 46 F.3d 1000, 1003 (10th Cir. 1995). But like in *Rodriguez-Aguirre*, Defendants here made only a facial attack. (App. A-202: "Defendants argue that Plaintiffs cannot establish standing to maintain their claims because they fail to allege within the Complaint that they are the actual owners of any unclaimed property as identified on the Colorado Treasury's website."). Thus, the district court was bound to accept Plaintiffs' allegations as true.

### 2. The District Court Erred by Finding That Plaintiffs Failed to Allege Past and Future Injuries

The district court next found that Plaintiffs had not alleged past or future injuries to support injury-in-fact. Its statement that Plaintiffs failed to allege past harm presumably is based on the same finding above that Plaintiffs did not sufficiently establish ownership of their unclaimed property. But under *Rodriguez-Aguirre*, and accepting Plaintiffs' allegations as true, they plainly alleged past harm. (App. A-10-11, ¶¶ 7-10).

With respect to future harm, Plaintiffs alleged that the Constitutional violations with the RUUPA itself are ongoing (*see, e.g.*, App. A-16-17, 21-25, 30, ¶¶ 25, 33(c)-(e), 36-37, 48, 58). The district court concluded that "there is no continuing injury" (App. A-204), but this too contradicts Plaintiffs' allegations. Plaintiffs further alleged that the manner in which Defendants are administering the RUUPA subjects them to "future wrongful seizure of their property." (App. A-101). The Court finds this insufficient to provide standing to seek prospective relief but that ignores the applicable standard.

In *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974), the Court found that "continuing, present adverse effects" is a sufficient injury-in-fact to provide standing to seek prospective relief. In addition to the many continuing injury allegations cited above, Plaintiffs also have present adverse effects. Indeed, as Plaintiffs alleged, they would not have known about the property alleged in the Complaint but for scouring the unclaimed property website. Defendants' violations thus impose a need for affirmative conduct by Plaintiffs to try to avoid additional property being seized. Otherwise, Plaintiffs will never know their property was taken or know to request it be returned given the lack of notice.

Moreover, Defendants' actions of taking property with "unknown" or "unidentifiable" owners" (App. A-21-23, ¶33(c)), or their practice of labeling financial institutions as the owner of the unclaimed property (*id.*), leaves Plaintiffs without the means to determine how much of their property is now or in the future may be in the possession of the State, even if they do search the Unclaimed Property Website regularly. Injunctive relief requiring Defendants' compliance with the RUUPA is their only remedy.

Lastly, this Court has recognized the need to "be cautious in applying Article III standing requirements in procedural due process cases." *Rector v. City & Cty. of Denver*, 348 F.3d 935, 943 (10th Cir. 2003). Specifically, "the requirements for Article III standing are somewhat relaxed, or at least conceptually expanded," for procedural injuries. *WildEarth Guardians v. U.S. E.P.A.*, 759 F.3d 1196, 1205 (10th Cir. 2014). Indeed, actual injury is not necessary for a valid procedural due process claim—thus the lack of notice alone is injury enough. *See Carey v. Piphus*, 435 U.S. 247, 266 (1978) (denial of due process is actionable without proof of actual injury). The district court's finding that Plaintiffs failed to allege past or future harm was thus error.

### 3. The District Court Erred by Finding Plaintiffs Cannot Sustain a Claim for Declaratory or Injunctive Relief

Lastly, the district court found that because Plaintiffs' claims to their property were "conjectural" and that they had not alleged "continuing injury," Plaintiffs could not sustain a claim for declaratory or injunctive relief under 42 U.S.C. § 1983. Once again, as explained above, the statement that Plaintiffs did not allege a continuing injury fails to accept Plaintiffs' allegations as true.

Plaintiffs' injuries are also concrete, not conjectural. A "concrete" injury is one that actually exists, rather than being abstract. *Spokeo*, 578 U.S. at 340. The loss of one's property without notice in violation of the Fifth and Fourteenth Amendments (as alleged) certainly qualifies as a concrete injury. *See Carey*, 435 U.S. at 266-67. And the fact that future injury may be intangible does not make it conjectural—as intangible harms can be concrete injuries. *Spokeo*, 578 U.S. at 340.

While it is easy for Defendants to claim that Plaintiffs do not know whether these future violations will impact their property, the threat of actual harm requiring affirmative conduct by Plaintiffs constitutes at least intangible harm. *See, e.g., Taylor v. Westly*, 488 F.3d 1197, 1199–200 (9th Cir. 2007) ("[T]he injuries suffered by plaintiffs include not only

those attendant to having their property escheated without notice, but also include: (1) the cost of having to constantly monitor their property to avoid escheat, either by devoting significant time to searching the internet themselves, by paying a service to do the same, or by "churning" their property so that it stays active and avoids escheat….").

Plaintiffs have thus alleged a sufficient basis to establish injury-in-fact as the first prong for standing to pursue declaratory and injunctive relief under § 1983.

**C.** **Plaintiffs' Allegations Satisfy the Other Elements of Article III Standing**

The district court's order appears to have dismissed Plaintiffs' claims based solely on the failure to allege injury-in-fact and does not discuss the remaining elements of Article III standing. But a conclusion that the challenged conduct is fairly traceable to the defendants and that the injury will be redressed by the relief requested necessarily follows from a finding that Plaintiffs suffered an injury-in-fact because the lack of notice relates to Defendants' possession of Plaintiffs' property and their claims relate to the manner in which it was taken and the procedure for its return.

### 1. Plaintiffs' Alleged Injuries are Fairly Traceable to Defendants

Article III standing requires the plaintiff's injury to be fairly traceable to the conduct of the defendants. *Lujan*, 504 U.S. at 560. This causation requirement demands less than proximate cause. *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1156 (10th Cir. 2005). Instead, there only needs to be a causal connection between the alleged injury and the conduct complained of. *Lujan*, 504 U.S. at 560. When the plaintiff's injury is the result of the government's action or inaction, there is ordinarily little question the plaintiff satisfies the causation prong. *Id.* at 561-62.

Here, Plaintiffs' injuries arose from (1) the RUUPA's facially unconstitutional provisions that do not require pre-deprivation notice; (2) Defendants' failure to enforce the RUUPA's express post-deprivation notice requirements; and (3) Defendants' unlawful takings of their property and conversion to a public use. Further, that some of this conduct originated or began in earlier administrations does not release the Defendants from liability because Plaintiffs alleged continuing violations. Because Defendants' actions and inactions were the cause of Plaintiffs' alleged injuries, Plaintiffs' complaint satisfies Article III's causation requirement.

## 2. Plaintiffs Seek Relief That Will Remedy Their Injuries

Article III standing also requires that the relief requested is likely to redress the plaintiff's alleged injury. *Lujan*, 504 U.S. at 561. Just like Article III's causation requirement, when the plaintiff's injury is the result of the government's action or inaction, there is ordinarily little question that the redressability requirement is met when a judgment will prevent the conduct complained of or require appropriate conduct. *Id.* at 561-62. And for procedural injuries, showing that the requested relief might redress the injury—as opposed to likely to redress—can suffice. *WildEarth Guardians*, 759 F.3d at 1182. And when a plaintiff is seeking injunctive relief, redressability is satisfied by "alleging a continuing violation or the imminence of a future violation of an applicable statute or standard." *NRDC v. Sw. Marine*, 236 F.3d 985, 995 (9th Cir. 2000).

Plaintiffs' property is presently unconstitutionally possessed without notice by Defendants and Defendants continue to administer the RUUPA in an unconstitutional manner. Injunctive and declaratory relief requiring Defendants to provide adequate notice would directly remedy these injuries. Thus, Plaintiffs' complaint satisfies the redressability requirement of Article III.

## CONCLUSION

For the reasons set forth above, Appellants ask this Court to reverse the district court's order dismissing this case for lack of standing and remanding so that the case can proceed to be adjudicated on the merits.

## REQUEST FOR ORAL ARGUMENT

Oral argument is warranted because this appeal presents novel and substantial issues of constitutional law, specifically the due process requirements related to a state's authority to take its citizens' private property for public use. The resolution of this issue will likely be of precedential value and affect the public interest. Oral argument will thus aid this Court in evaluating the questions presented.

Dated: March 14, 2023                     Respectfully submitted,

                                          */s/ Richard M. Paul III*
Jonathan Greiner                          Richard M. Paul III
Christopher Ross                          Laura C. Fellows
**Greiner & Associates, P.L.L.C.**        David W. Bodenheimer
401 Austin Highway, Suite 200             **PAUL LLP**
San Antonio, Texas 78209                  601 Walnut Street, Suite 300
Tel. (210) 824-6529                       Kansas City, Missouri 64106
Jon@greinerattorneys.com                  Rick@PaulLLP.com
Chris@greinerattorneys.com                Laura@PaulLLP.com
                                          David@PaulLLP.com

## CERTIFICATE OF COMPLIANCE

1. This document complies with the word limit of Fed. R. App. P. 32 (a)(7) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

   a. This document contains 4,751 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(6) because:

   a. This document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 MSO v. 2302 in 14 point Century Schoolbook.

Dated: March 14, 2023                    */s/ Richard M. Paul III*
                                         Richard M. Paul III

## CERTIFICATE OF SERVICE

I hereby certify that on March 15, 2023 I electronically filed the foregoing using the court's CM/ECF system which will send notification to all counsel of record.

Dated: March 15, 2023               */s/Richard M. Paul III*
                                     Richard M. Paul III

# Attachment 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:22-cv-01379-CNS-MDB

DAVID KNELLINGER and
ROBERT STOREY, individually and on behalf of all persons similarly situated,

      Plaintiffs,

v.

DAVID YOUNG, in his individual and official capacities as Colorado Treasurer, Colorado Office of Treasury; and
BIANCA GARDELLI, in her individual and official capacities as Director of Colorado Department of Treasury, Unclaimed Property Division,

      Defendants.

---

## ORDER

---

Before the Court is Defendants' Motion to Dismiss under Rules 12(b)(1) and 12(b)(6). (ECF No. 31).  The Court GRANTS the motion for the following reasons.

## I.  FACTS[1]

Plaintiffs bring this putative class action under 42 U.S.C. § 1983 against Defendant Young in his individual and official capacity as Colorado Treasurer, and Defendant Gardelli in her individual and official capacity as Director of the Colorado Department of Treasury regarding unclaimed property held in trust under the Revised Uniform Unclaimed Property Act, Colorado Revised Statute § 38-13-101, *et. seq.* (RUUPA)[2].  Plaintiffs allege that Defendants' failure to

---

[1] For the purposes of this motion, the Court takes as true all allegations of the Complaint.  (*See* ECF No. 1).
[2] RUUPA was enacted in Colorado via Senate Bill 19-088 and became effective on July 1, 2020.  (ECF No. 1, p. 7).

provide notice to the property owners about the alleged seizures and sales of abandoned property allows them to use RUUPA funds "to satisfy budget shortfalls."  (ECF No. 1, pp. 3-6).

Under the RUUPA, if a property holder cannot locate the owners after a certain period of time (as defined by Colorado Revised Statute §§ 38-13-201 to -220) and the property is presumed to be abandoned, the holder will first provide notice to the apparent owner before the administrator may take custody of the property.  *See* §§ 38-13-501 to -504, 38-13-601 to -609.  Certain properties may be sold by the administrator at a public sale after public notice.  *See* §§ 38-13-701 to -705. Any money received or derived from the sale of the property is held in trust by the administrator for the benefit of the owner and not the State.  *See* §§ 38-13-801 to -803.  The money in the unclaimed property trust fund does not revert to the general fund at the end of any fiscal year. § 38-13-801(1)(d).[3]  The owner may submit a claim to the administrator and may search for unclaimed property on the Colorado Department of Treasury's website.  *See Claim Unclaimed Property* (last visited January 4, 2023).[4]

Plaintiffs Knellinger and Storey searched their names on the website and discovered that they may each have a claim for abandoned property.  (ECF No. 1, pp. 3-4).  Plaintiffs allege that they did not receive any notice from the Colorado Department of Treasury.  (*Id.*).  Plaintiffs neither allege in the Complaint whether they have attempted to claim the property identified on the website under RUUPA's administrative claims process nor identify what type of property is being held by

---

[3] The Court takes judicial notice of the Colorado Unclaimed Property Website.  *See O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007) ("It is not uncommon for courts to take judicial notice of factual information found on the world wide web.").  According to the Colorado Department of Treasury's website, "Unclaimed property always belongs to its owner even if it is never claimed. All unclaimed property is held in trust until the rightful owner(s) or their heirs claim it."  *See FAQS*, https://colorado.findyourunclaimedproperty.com/app/f aq-claim (last visited December 12, 2022).
[4] The Court notes that this website was referenced in the Complaint and is central to Plaintiffs' claims.

the Colorado Department of Treasury, Unclaimed Property Division.  The proposed Class is defined as: "[a]ll persons or entities who did not receive actual notice before their property was taken by the State of Colorado between May 27, 2016[,] and the present."  (ECF No. 1, p. 23).

Plaintiffs raise five claims for relief:[5]  (1) injunctive and declaratory relief that Defendants violated the Fourth Amendment (Right to Privacy), Fifth Amendment (Takings Clause), Fourteenth Amendment (Due Process), and the Due Process Clause of the Colorado Constitution (Colo. Const. art. 2, § 25); (2) violation of their due process rights under the Fourteenth Amendment via 42 U.S.C. § 1983 and the Due Process Clause of the Colorado Constitution; (3) violation of the Takings Clause of the Fifth Amendment via 42 U.S.C. § 1983; (4) accounting; and (5) breach of fiduciary duty under Colorado Revised Statutes §§ 24-22-101, 604, 38-13-803. (ECF No. 1, pp. 24-29).

Defendants move to dismiss arguing that (1) Plaintiffs lack standing; (2) the Court should decline jurisdiction of the § 1983 under the *Burford* abstention doctrine; (3) qualified immunity bars Plaintiffs' § 1983 claims for monetary damages; (4) Eleventh Amendment sovereign immunity bars state law claims against Defendants in their official capacity; (5) the state law claims for monetary relief are barred by the Colorado Governmental Immunity Act and for failure to exhaust administrative remedies; (6) Counts II, III, and IV fail to state a claim for relief and are barred by the statute of limitations; (7) Plaintiff cannot state a claim for accounting.  (ECF No. 21, pp. 10-35).

---

[5] It is unclear to this Court whether Plaintiffs are only raising five claims for relief.  At various points in the Complaint, Plaintiffs also allege that Defendants violated the Colorado Constitution, Article II, Section 25, Article I of the United States Constitution, Fourth Amendment, Fifth Amendment, and Fourteenth Amendments, and the Contract Clause of Article I, Section 10. Plaintiffs also fail to specify whether they are raising claims of violations of federal law via 42 U.S.C. § 1983 against Defendants in their official or individual capacity.

3

## II.  LEGAL STANDARD

Rule 12(b)(1) governs dismissal challenges for lack of subject matter jurisdiction and assumes two forms: factual or facial.  In the first, the moving party may "facially attack the complaint's allegations as to the existence of subject matter jurisdiction." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004). When reviewing a facial attack, courts must accept a complaint's allegations in the complaint as true. *Ratheal v. United States*, No. 20-4099, 2021 WL 3619902, at *3 (10th Cir. Aug. 16, 2021) (citation omitted).  In the second, a party may "go beyond" the complaint's allegations by presenting evidence challenging the factual basis "upon which subject matter jurisdiction rests." *Nudell*, 363 F.3d at 1074 (citation omitted).  When reviewing a factual attack, courts cannot "presume the truthfulness of the complaint's factual allegations," and may consider documents outside the complaint without converting the motion to dismiss into a motion for summary judgment. *Ratheal*, 2021 WL 3619902, at *3.  In this instance, the plaintiff bears the burden of establishing subject matter jurisdiction as the party asserting it exists. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true and interpreted in the light most favorable to the non-moving party, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Additionally, the complaint must sufficiently allege facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed; however, a complaint may be dismissed because it asserts a legal theory not cognizable as a matter of law. *Forest Guardians v. Forsgren*,

478 F.3d 1149, 1160 (10th Cir. 2007); *Golan v. Ashcroft*, 310 F. Supp. 2d 1215, 1217 (D. Colo. 2004).  A claim is not plausible on its face "if [the allegations] are so general that they encompass a wide swath of conduct, much of it innocent," and the plaintiff has failed to "nudge[ the] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).  The standard, however, remains a liberal pleading standard, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotations and citation omitted).

## III.  ANALYSIS

### A.    Conceded Claims and Claims Not Raised

In their response to Defendant's motion to dismiss, Plaintiffs abandon their claims for violations of the Contracts Clause, U.S. Const. article I, section 10, clause 1, and the Fourth Amendment for violation of privacy.  (ECF No. 33, p. 15 n.5).  Defendants also argue that Plaintiffs have conceded all their state law claims for relief.  (ECF No. 40. pp. 1-2).  The Court agrees that Plaintiffs have abandoned their fifth claim, breach of fiduciary duty, by not responding to Defendant's arguments in the motion to dismiss.  Plaintiffs, however, did sufficiently respond to the motion to dismiss regarding their accounting claim.[6]  Accordingly, Plaintiffs' federal claims for violations of the Contracts Clause, U.S. Const. article I, section 10, clause 1,[7] and the Fourth

---

[6] Confusingly, it appears that Plaintiffs may have also abandoned the remaining state law claims in a separate filing. (*See* ECF No. 39, pp. 3-4).  In an abundance of caution, this Court will proceed with examining Plaintiffs' briefing in their response.  (See ECF No. 33).

[7] The Complaint contains several references to the Contracts Clause, but Plaintiffs fail to assert a claim for relief based on the Contracts Clause or plead any facts in support of such a claim.  To the extent that this claim was even raised, which is wholly unclear to the Court, it is conceded and dismissed.

Amendment for violation of privacy and state law claim regarding breach of fiduciary duty are concluded and, therefore, DISMISSED.

## B.   Federal Rule of Civil Procedure 12(b)(1)

Defendants move to dismiss Plaintiffs' claims for lack of subject matter jurisdiction due to lack of standing and sovereign immunity.  A court must first address a motion to dismiss for lack of subject matter jurisdiction in order to determine jurisdiction before addressing any other arguments regarding the underlying validity of a claim.  *Bell v. Hood*, 327 U.S. 678, 682 (1946).

### 1.  *Sovereign Immunity and the Eleventh Amendment*

Defendants argue that sovereign immunity bars only Plaintiffs' state law claims.  Plaintiffs argue that their state law claim for accounting is permissible under the *Ex parte Young* exception because they are suing "Defendants in their official capacities, they alleged an ongoing violation of federal law, and they are seeking prospective relief."  (ECF No. 33, p. 22).[8]

The Eleventh Amendment of the United States Constitution provides that the "Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  A plaintiff may not circumvent the Eleventh Amendment by suing specific state officials instead of the State.  *See Hafer v. Melo*, 502 U.S. 21, 25 (1991).  Sovereign immunity acts as a jurisdictional bar that precludes unconsented suits in federal court against an arm of the state or from asserting a damage claim against state

---

[8] The Court will inspect all of Plaintiffs' claims because federal courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party," and may at any stage in the litigation raise the question of whether there is subject matter jurisdiction sua sponte.  *Image Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006); *V–1 Oil Co. v. Utah State Dep't of Pub. Safety*, 131 F.3d 1415, 1419–20 (10th Cir. 1997) (a federal court may raise Eleventh Amendment immunity sua sponte).

officers in their official capacities. *Colby v. Herrick*, 849 F.3d 1273, 1276 (10th Cir. 2017); *Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013) (citation omitted); *see also Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1009 (10th Cir. 1998) ("An action against a person in his official capacity is, in reality, an action against the government entity for whom the person works."). Eleventh Amendment immunity also extends to claims in federal court brought against the state or its agencies, as well as suits against state officials sued in their official capacity for monetary damages under § 1983. *Muscogee (Creek) Nation v. Oklahoma Tax Comm'n*, 611 F.3d 1222, 1227 (10th Cir. 2010); *Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995).

However, immunity from suit is not absolute —a claim may fall under the *Ex parte Young* exception, States may consent to suit in federal court, or Congress may abrogate the States' sovereign immunity. *See Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990). Plaintiffs do not argue that Colorado consented to the lawsuit or that Congress abrogated Colorado's sovereign immunity. A review of RUUPA also does not indicate to this Court that the State waived its sovereign immunity.

### a. *Ex parte Young* Exception

The Supreme Court carved out an exception to Eleventh Amendment sovereign immunity when the suit challenges the constitutionality of state officials acting in their official capacity. *Ex parte Young*, 209 U.S. 123, 159-60 (1908); *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 269 (1997). For Plaintiffs' civil action to fall under the *Ex parte Young* exception, they must satisfy three criteria: (1) the individual state officers named must be acting in their official

7

capacities, (2) the complaint alleges an ongoing violation of federal law, and (3) the plaintiff seeks

only prospective relief.  *Hendrickson v. AFSCME Council 18*, 992 F.3d 950, 965 (10th Cir. 2021).

### i.   State Law Claims

To the extent Plaintiffs' state law claims were not conceded,[9] they are barred by sovereign

immunity and do not fall under the *Ex parte* Young exception.  *See Pennhurst State Sch. & Hosp.*

*v. Halderman*, 465 U.S. 89, 121 (1984) (holding that a claim that state officials violated state law

in carrying out their official responsibilities was a claim against the State that is protected

sovereign immunity).   Accordingly, Plaintiffs' state law claims are DISMISSED WITHOUT

PREJUDICE.[10]

### ii.   Federal Law Claims

Regarding Plaintiffs' allegations that Defendants in their official capacity violated the Fifth

and  Fourteenth  Amendments  through  §  1983,  Defendants  do  not  have  immunity  under  the

Eleventh Amendment.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989) (A

state official "in his or her official capacity, when sued for injunctive relief, would be a person

under § 1983 because 'official-capacity actions for prospective relief are not treated as actions

against the State.'").  The Court will examine whether Plaintiffs have standing to bring these claims

in federal court.

---

[9] Plaintiffs noted in a separate filing that "Plaintiffs have conceded their state law claims and are only proceeding on their federal law claims. Defendants may no longer claim 11th Amendment immunity, Colorado Governmental Immunity Act, or exhaustion of administrative remedies as defenses and may only avail themselves of qualified immunity."  (*See* ECF No. 39).   Plaintiffs should have, in the spirit of judicial economy, notified the Court in their response or a supplemental filing that it was conceding the state law claims rather than burying their concession in their Opposition to Defendants' Motion to Stay Discovery.

[10] Dismissal on sovereign immunity grounds must be without prejudice.  *See Rural Water Sewer & Solid Waste Mgmt., Dist. No. 1, Logan Cnty., Oklahoma v. City of Guthrie*, 654 F.3d 1058, 1069 n.9 (10th Cir. 2011).

2.  *Standing and 42 U.S.C. § 1983*

Defendants argue that Plaintiffs cannot establish standing to maintain their claims because they fail to allege within the Complaint that they are the actual owners of any unclaimed property as identified on the Colorado Treasury's website.  Plaintiffs argue that they have sufficiently alleged ownership and are not required to establish that they are actual owners of the property at this time.

"The standing inquiry ensures that a plaintiff has a sufficient personal stake in a dispute to ensure the existence of a live case or controversy which renders judicial resolution appropriate." *Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir. 2004).  To demonstrate standing, Plaintiffs must establish:  (1) they have suffered an injury in fact, which is concrete and particularized as well as actual or imminent, as opposed to hypothetical; (2) there is a causal connection between the injury and the challenged conduct, which is not the result of a third party's independent action; and (3) the injury is likely to be redressed by a favorable decision as opposed to merely speculative.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).  The burden to establish standing rests with Plaintiffs as they are the party that invoked the jurisdiction of the federal courts.  *Id*. at 561.

The first requirement can be satisfied differently depending on whether the plaintiff seeks prospective or retrospective relief.  *Tandy*, 380 F.3d at 1283.  A plaintiff, if seeking prospective relief, must be suffering a continuing injury or under an immediate and real threat of being injured in the future.  *Id*. (citation omitted).  A plaintiff's standing for retrospective relief is based on past injuries, where there is a real and immediate threat of repeated injury.  *Id.*; *PeTA, People for the Ethical Treatment of Animals v. Rasmussen*, 298 F.3d 1198, 1202 (10th Cir. 2002).  "[W]hile a

9

plaintiff who has been constitutionally injured can bring a § 1983 action to recover damages, that same plaintiff cannot maintain a declaratory or injunctive action unless he or she can demonstrate a good chance of being likewise injured in the future." *Facio v. Jones*, 929 F.2d 541, 544 (10th Cir. 1991).   Regardless of what type of relief a plaintiff seeks, the claimed injury cannot be contingent on speculation or conjecture.  *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990).

In a class action, the plaintiff is required to allege that they have been personally injured, "not that injury has been suffered by other, unidentified members of the class to which they belong."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 n.6 (2016).  Indeed, a prerequisite for class certification requires that the class representatives "be a part of the class and possess the same interest and suffer the same injury as class members."  *Rector v. City & Cnty. of Denver*, 348 F.3d 935, 949 (10th Cir. 2003).

In this case, Defendants argue that Plaintiffs lack standing because their claims of injuries are conjectural because Plaintiffs fail to allege that they have filed any administrative claim to establish ownership over the property identified in the Complaint.  (ECF No. 31, p. 10).  Plaintiffs, citing *James et al v. Hegar Jr. et al*, No. 5:22-CV-51-DAE, slip op. at *28-29 (W.D. Tex. Sept. 6, 2022); *Salvato v. Harris*, No. 21-12706-FLW, 2020 WL 1224962, at *18 fn. 5 (D.N.J. Apr. 26), argue that two separate federal district courts have rejected this argument.  This is not so.

In *James*, the Western District of Texas did not discuss standing as Defendants moved to dismiss the putative class action based on sovereign immunity and the failure to state a claim. (ECF No. 33-1, p. 9).  Additionally, the facts of the case are distinct from the instant case because the funds from unclaimed property in Texas were not held in a separate custodial trust for owners but deposited into the state's general revenue fund under the Texas Unclaimed Property Act.  (*Id.*,

p. 17). *Salvato* is also factually distinct.  In *Salvato*, the District Court of New Jersey found, among other things, that Plaintiff had standing because (1) she alleged that New Jersey holds unclaimed property or proceeds from the sale of said property in a separate trust account under the New Jersey Uniform Disposition of Unclaimed Property Act and (2) the defendant notified her that it possessed about forty shares of stock that had been previously owned by Plaintiff's deceased mother. *Salvato*, 2022 WL 1224962, at *1.  The district court determined that the plaintiff had standing to seek injunctive relief and the return of her property.  *Id.*, at *6 n.5.

First, Plaintiffs have not sufficiently alleged ownership of the respective property identified in the Complaint.  Rather, as the Complaint alleges, Plaintiffs searched for their names on the Colorado Department of Treasury's website and found potential claims; however, these may be claims of individuals who have similar names.  Defendants note that Plaintiffs have neither filed an administrative claim to establish ownership over the property nor informed the Court about the type of property that is in dispute at this time.  (ECF No. 31-1, p. 3).  Additionally, Plaintiff Knellinger's claim for alleged abandoned property could range between $50 to $249 while Plaintiff Storey's claim for alleged abandoned property is potentially valued at under $50.  (ECF No. 1, pp. 3-4).  Plaintiffs fail to specify or identify what type of property was allegedly improperly seized and whether the property was actually owned by them.  Second, Plaintiffs fail to allege injuries either in the past or future that could give rise to their claims.  Plaintiffs merely allege that they currently reside in Colorado and, therefore, "could be subject to future wrongful seizure of their property." (ECF No. 33, p. 8).  This is not enough to satisfy Plaintiffs' burden under *Lujan*.  Third, because Plaintiffs' allegations are only conjectural and there is no continuing injury, they cannot sustain a claim under § 1983 for declaratory or injunctive relief.  Plaintiffs have only alleged

11

Attachment 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.  22-cv-01379-CNS-STV

DAVID KNELLINGER, and
ROBERT STOREY,

      Plaintiffs,

v.

DAVID YOUNG in his individual and official capacities as Colorado State Treasurer,
Colorado Office of Treasury, and
BIANCA GARDELLI, in her individual and official capacities as Director of Colorado
Department of Treasury, Unclaimed Property Division,

      Defendants.

---

**FINAL JUDGMENT**

---

In accordance with the orders filed during the pendency of this case, and

pursuant to Fed. R. Civ. P. 58(a), the following Final Judgment is hereby entered.

Pursuant to the ORDER of U.S. District Judge Charlotte N. Sweeney issued on

January 6, 2023, [ECF No. 43] it is

ORDERED that the defendants' Motions to Dismiss [ECF No. 31] is GRANTED.

It is

FURTHER ORDERED that the plaintiffs' claims are DISMISSED WITHOUT

PREJUDICE. It Is

FURTHER ORDERED that this case is closed.

Dated at Denver, Colorado this 6th day of January, 2023.

FOR THE COURT:
JEFFREY P. COLWELL, CLERK

By:  s/   J. Dynes
_____
J. Dynes,
Deputy Clerk